COLIN A. YUHL (SBN 259196)
ERIC F. YUHL (SBN 102051)
MICHAEL C. MARTINEZ (SBN 188084)
**YUHL CARR LLP**
4676 Admiralty Way, Suite 550
Marina Del Rey, CA 90292
Tel.: (310) 827-2800
Fax: (310) 827-4200

DOUGLAS H. WIGDOR (NY SBN 2609469)
LAWRENCE M. PEARSON (NY SBN 3954591)
RENAN F. VARGHESE (NY SBN 4575981)
(All to be admitted *pro hac vice*)
**WIGDOR LLP**
85 Fifth Avenue
New York, NY 10003
Tel.: (212) 257-6800
Fax: (212) 257-6845

Attorneys for Plaintiff,
**SHANNON HIGH-BASSALIK**

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHANNON HIGH-BASSALIK,<br>                Plaintiff,<br><br>        v.<br><br>AL JAZEERA AMERICA and EHAB AL SHIHABI, in his individual and professional capacities,<br>                Defendants. | Case No.: _____<br><br>**JURY TRIAL DEMAND**<br><br>**COMPLAINT FOR DAMAGES** |

Plaintiff Shannon High-Bassalik ("Ms. High-Bassalik" or "Plaintiff"), by and through her undersigned counsel, Wigdor LLP, as and for her Complaint in this action against Defendants Al Jazeera America ("Al Jazeera" or the "Company") and Ehab Al Shihabi ("Al Shihabi") (collectively, "Defendants"), hereby alleges as follows:

**NATURE OF THE CLAIMS**

1.      Al Jazeera was founded in America on the principles of offering "unbiased, fact-based, in-depth stories of U.S. and international news," while at the same time being guided by a self-designed "mission" to have "integrity and respect guide our conduct internally and externally."

2.      The truth, unfortunately, paints a much darker and bleaker picture, one where truth and objectivity are set aside to cater to the Company's pro-Arabic prejudices.

3.      As ratings failed to live up to the expectations of management, Al Jazeera openly decided to abandon all pretense of neutrality in favor of putting the Arabic viewpoint front and center, openly demanding that programs be aired that criticized countries such as America, Israel and Egypt.

4.      Dedicated journalists such as Ms. High-Bassalik were told that if this abandonment of journalistic integrity led people to deem them "terrorists," that was an acceptable risk for the Company to take.

5.      For example, in a meeting with news producers, Al Jazeera's corporate management in Qatar outrageously stated that many in the Arab world believed that the attacks on American on September 11, 2001 were staged by the CIA to allow America to wage an unjust war on the Arabic world.  Incredibly, this was held out as the type of editorial viewpoint the Company should take guidance from.

6.      Also following this directive, employees made inflammatory statements such as "Israelis are like Hitler," and "Anyone who supports Israel should die a fiery death."   Rather than discipline these offending employees, the Company brazenly demonstrated its true feelings

---

*High-Bassalik v. Al Jazeera America, et al.*                    2                    *Complaint for Damages*

by terminating the employment of individuals who dared stand up to complain about such blatant discrimination, especially coming from an ostensibly unbiased news organization.

7.      It is little wonder, given this editorial mandate that ran throughout the Company, that Al Jazeera's unlawful and discriminatory behavior extended to its treatment of its employees.

8.      Far from being governed the "integrity and respect" that it publicly lauded, the Company has instead systematically favored its Arabic and male employees, treating its non-Arabic and female employees as second class citizens who are the constant targets of abuse and degradation.

9.      Individuals who had no more experience than managing a local Sunglass Hut were promoted to key leadership positions, while more qualified non-Arabic, American and female employees consistently saw their performance undermined and their professional responsibilities taken away from them.

10.      Any employee who objected to this conduct, including Plaintiff, were marginalized, belittled, and ultimately terminated.

11.      This is an action for declaratory, injunctive and monetary relief to redress the unlawful discrimination, hostile work environment and retaliation committed against Plaintiff throughout her employment in violation of Section 1981 of the Civil Rights Act of 1866, 42 U.S.C. § 1981 ("Section 1981"), the New York State Human Rights Law, New York Executive Law §§ 290 *et seq.* ("NYSHRL") and the New York City Human Rights Law, New York City Administrative Code §§ 8-101 *et seq.* ("NYCHRL").

12.     Further, Defendants' conduct has breached the contract Plaintiff had with the Company, governing the terms and conditions of her employment, and breached the implied covenant of good faith and fair dealing attendant to that contract.

13.     Defendants' conduct also is in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e *et seq.* ("Title VII").  Simultaneously with the filing of this action, Plaintiff will file a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") with regard to these violations.  Plaintiff will seek leave to file an Amended Complaint following her receipt of a Notice of Right to Sue.

## JURISDICTION AND VENUE

14.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331, 1343 and 1367(a).

15.     Venue is proper in this district, and this Court has the authority to hear Plaintiff's claims arising from New York state and city law, because Ms. High-Bassalik and Al Jazeera entered into an Employment Agreement dated July 15, 2013 which states: "this Agreement will be governed by the internal laws of the State of New York (without regard for conflict of laws provisions).  [Plaintiff] irrevocably consents to the jurisdiction and venue of the federal, state and local courts within the State of California."

## PARTIES

16.     Plaintiff Shannon High-Bassalik is a former Senior Vice President of Programming and Documentaries at Al Jazeera.  She is a resident of the State of Connecticut and at all relevant times met the definition of an "employee" under all applicable statutes.

17.     Defendant Al Jazeera America is a domestic limited liability company headquartered 305 West 34th street, First Floor, New York, NY 10001.  At all relevant times, Defendant Al Jazeera met the definition of "employer" under all applicable statutes.

18.     Defendant Ehab Al Shihabi is a resident of the State of New York and the interim Chief Executive Officer of Al Jazeera, and the Executive Director for International Operations for Al Jazeera.  At all relevant times, Defendant Al Shihabi supervised the employment of Plaintiff, and, in that role, he had the authority to discipline and fire Plaintiff, direct her work activities, assign her job responsibilities and monitor her performance.  Accordingly, at all relevant times, Defendant Al Shihabi was an "employer" within the meaning of all applicable statutes.

## PROCEDURAL REQUIREMENTS

19.     A copy of this Complaint was served on both the New York City Commission on Human Rights and the Office of the Corporation Counsel of the City of New York, thereby satisfying the notice requirements of the New York City Administrative Code.

20.     Simultaneous with the commencement of this action, Plaintiff High-Bassalik will promptly file a charge of discrimination with the EEOC.  Upon receiving her Notice of Right to Sue, Plaintiff will seek leave to file an Amended Complaint to include claims under Title VII arising from the same facts as alleged herein.

21.     Any and all other prerequisites to the filing of this suit have been met.

## FACTUAL ALLEGATIONS

**Background**

22.     Ms. High-Bassalik commenced her employment with Al Jazeera in or around July 2013, as a Senior Vice President of Programming and Documentaries.

23. Before commencing her employment, Ms. High-Bassalik was forced to sign an Employment Contract with Al Jazeera (the "Contract").

24. Under the terms of the Contract, Ms. High-Bassalik was guaranteed three years of employment with Al Jazeera, and her salary for the entire duration, irrespective of whether her employment was terminated by the Company.

25. Prior to joining Al Jazeera, Ms. High-Bassalik enjoyed a tremendously accomplished, award-winning and successful career in the television and journalism industries, including at CNN, NBC and MSNBC.

26. Throughout her tenure with Al Jazeera, Ms. High-Bassalik was universally praised for her leadership, vision and integrity.

27. Both her direct reports and colleagues in management recognized Ms. High-Bassalik's commitment to quality, honest journalism and her role as a supportive coworker to her fellow employees at Al Jazeera.

28. In fact, Ms. High-Bassalik only agreed to join Al Jazeera because of the Company's ostensible support for the kind of truthful and objective journalism that had been a hallmark of her career.

**Defendants' Unlawful Discrimination**

29. Soon after commencing her employment, when viewership failed to meet the Company's expectation, Ms. High-Bassalik was shocked as Al Jazeera pivoted away from objectivity and towards the kind of biased reporting that Ms. High-Bassalik had avoided throughout her career.

30. Worse still, from Ms. High-Bassalik's point of view, was that the Company's abandonment of journalistic objectivity was not merely done to advance a particular political

viewpoint, but to discriminate on the basis of race/ethnicity and to advance a pro-Arabic/Middle Eastern agenda, often at the expense of Jewish people.

31.     By way of example only, during and shortly after the Israel/Gaza conflict in 2014, the news and programming department was explicitly instructed to favor the Middle Eastern point of view and cast Israel as the villain, creating taglines such as "Gaza under Fire," and airing films called "Shujayea: Massacre at Dawn" and "The Day Israel Attacked America."

32.     In fact, Al Jazeera's parent company, Al Jazeera Media Network, explicitly told the Company's employees that their mission was to "bring the Arab/Muslim perspective" to America.

33.     For example, the Company's producers were told on one occasion that much of the Arab world believed that the horrific attacks perpetrated on America on September 11, 2001 were actually staged by the CIA to create a false justification for a war against the Arab world following the end of the Cold War.

34.     This outrageous and patently offensive statement was held out as an example of the kind of viewpoint that Al Jazeera should keep in mind as it decided on the tone and content of its reporting.

35.     On another occasion, the head of the Company's Investigative Unit shockingly tweeted out that "Israelis are like Hitler."

36.     When the Company's producers tried to air balanced news reports, they were accused by management of being "very biased for Israel."

37.     As this overtly anti-Israel stance spread and began encroaching on the programs and documentaries for which Ms. High-Bassalik was responsible, she repeatedly raised her objections to management.

38.     For example, she told her supervisors that Al Jazeera was actively advocating a discriminatory attitude towards people who were not Middle Eastern and/or Arabic, which was a flagrantly improper position for any company to take, especially an ostensibly objective news organization.

39.     Ms. High-Bassalik also complained about the fact that the Company's messages advocating Arabic viewpoints over all others were in violation of its cable contracts in America, which required Al Jazeera to remain neutral in all positions.

40.      She made clear that Al Jazeera Media Network's management in Doha should not have been dictating the coverage of its supposedly independent subsidiary.

41.     Defendant Al Shihabi responded to these kinds of complaints by stating that the Company was not Al Jazeera America but "Al Jazeera *in* America" and screaming at anyone who objected to these viewpoints that they were no longer welcome at the Company.

42.     Defendant Al Shihabi admitted to Plaintiff that he was pushing the Company to abandon all pretense of neutrality and advocate a pro-Arabic viewpoint because he thought it would please "Doha," referring to Al Jazeera's ownership in Qatar.

43.     In fact, during a meeting with a high-ranking executive of Al Jazeera in Qatar, Ms. High-Bassalik was lectured about the fact that she and the Company's other non-Arabic employees were not being "brave" enough with their stories.

44.     Instead, she was specifically told that she should advocate the Arabic point of view in stories, even if "they call us terrorists, so be it."

45.     She was also instructed that Al Jazeera should violate its cable contracts by airing programs in Arabic with English subtitles and by showing programs produced and originally aired on Al Jazeera Arabic, Al Jazeera English, and available online.

46.     To demonstrate just how committed the Company was to advocating an Arabic point of view over all others, during this time period, Al Jazeera aired programs targeting countries such as Egypt and America.

47.     In a candid admission of Al Jazeera's true purpose, the Company's employees were told that Al Jazeera was purchased for the purpose of bringing the Arabic viewpoint to America.

**Hostile Work Environment**

48.     The Company's discriminatory preferences for Arabic/Middle Easterners extended to its employment practices.

49.     Glaringly, in 2014, Ms. High-Bassalik was at a meeting of the Company's executives, led by Defendant Al Shihabi, during which the performance ratings of individual employees were discussed.

50.     As the meeting went on, Ms. High-Bassalik was shocked as it became clear that Al Jazeera was systematically upgrading the performance ratings given to Arabic employees, while simultaneously downgrading the ratings of its non-Arabic employees.

51.     When a non-Arabic, American employee objected to this blatantly discriminatory practice, the Company's Chief Legal Officer ("CLO"), David Harleston, told him that any criticisms of the process favoring Arabic employees were not welcome at Al Jazeera.

52.     Al Jazeera also routinely and explicitly discriminated in favor of Arabic employees in its hiring and promotion practices.

53.     On another occasion, Al Jazeera's marketing department was told that it would have to hire an Arabic male for a managerial position, despite the fact that the sum total of his previous work experience was working as a retail manager at a Sunglass Hut.

*High-Bassalik v. Al Jazeera America, et al.*          9          *Complaint for Damages*

54.     For example, on one occasion, Plaintiff was told that she would have to hire an Arabic woman to fill the position of Producer, despite the fact that there was an ostensible hiring freeze at the Company and despite the fact that this Arabic employee had no prior experience that would qualify her for the role.

55.     When Ms. High-Bassalik complained about this, pointing out that Al Jazeera had several highly qualified non-Arabic employees who had been waiting for a Producer position to become available, her complaints were summarily dismissed and she was informed that she had no say in the matter.

56.     Another Arabic employee was promoted to the position of Senior Vice President despite spending the last 15 years as a freelance Video Editor.

57.     Soon after he was hired, this employee, taking his cue from Al Jazeera's management, displayed his vile and unlawful animus towards individuals of non-Arabic descent, stating, "Anyone who supports Israel should die a fiery death."

58.     In a clear message to the Company's non-Arabic employees that any kind of dissent would not be tolerated, not only was this employee not disciplined for his outrageous and invidious statement, Al Jazeera actually terminated the employment of the non-Arabic employee who complained about this overt discrimination.

59.     On another occasion, Defendant Al Shihabi informed Plaintiff that she would have to remove a qualified non-Arabic American from an assignment in favor of a less-qualified Arabic male.

60.     Defendants' discriminatory treatment was not limited to their non-Arabic employees.

---

61.     The Company also discriminated against its female employees throughout Ms. High-Bassalik's employment in favor of male employees.

62.     Defendants repeatedly diminished the responsibilities of their female employees, while at the same time promoting less-qualified male employees to fill the same positions.

63.     Defendant Al Shihabi in particular targeted Al Jazeera's female employees for discriminatory treatment.

64.     For example, Defendant Al Shihabi would undermine the performance of female employees by giving them inconsistent instructions, as well as unreasonably short deadlines, and then publicly yell at them when they were not able to comply with these unfair expectations.

65.     When female employees questioned his decisions, he would often belittle and scream at them, threatening that he would terminate their employment unless they fell in line.

66.     Defendant Al Shihabi would further interfere with the professional responsibilities of female employees, including Ms. High-Bassalik, by excluding them from important meetings directly related to their responsibilities.

67.     Defendant Al Shihabi would also refuse to acknowledge the work performed by female employees, including Ms. High-Bassalik, even going so far as to outright leave meetings where female employees were giving presentations and stating that he would only return when such employees had stopped speaking.

68.     In keeping with Defendant Al Shihabi's discriminatory attitude, a Senior Vice President of Al Jazeera openly removed female employees from their work assignments without explanation and replaced them with male employees, even though those male employees had substantially less skills and qualifications for the work.

69.     When female employees complained about this discriminatory treatment, Defendant Al Shihabi habitually responded to them in a condescending and demeaning manner that was in stark contrast to the respect he afforded male employees.

70.     Defendant Al Shihabi treated these legitimate professional complaints from female employees as if such employees were simply being emotional, in the stereotypical manner of all women, asking them why they "didn't love me anymore," whenever they objected to his repeated discriminatory practices, and telling Ms. High-Bassalik that she was his "sister."

71.     Even Al Jazeera's CLO, David Harleston, participated in this discriminatory treatment of female employees at the Company.

72.     Mr. Harleston repeatedly questioned and belittled Ms. High-Bassalik's programming and staffing decisions, subjecting her to scrutiny on matters that were not within his professional ambit, whereas he never exposed similarly-situated male employees to such treatment.

73.     He also publicly demeaned Ms. High-Bassalik and disparaged her professionally, screaming at her whenever she objected to his mistreatment.

74.     Similarly, Mr. Harleston erected obstacles to other female employees being able to complete their jobs, requiring approval for actions that were not required of male employees.

75.     Unable to tolerate the persistent discrimination, Ms. High-Bassalik complained about Mr. Harleston, and even escalated her complaints about Mr. Harleston's discriminatory conduct to Defendant Al Shihabi.

76.     Defendants refused to address the complaints made by Plaintiff and other female employees about Mr. Harleston's treatment, and Al Jazeera never disciplined Mr. Harleston in any way.

**The Company's Unlawful Retaliation**

77.     Al Jazeera has further demonstrated its hostility towards its female employees, including Ms. High-Bassalik, by forcing several of them to resign or simply terminating their employment to replace them with male employees.

78.     By way of example only, two of the highest ranking non-Arabic, female employees of the Company, the Executive Vice President of Corporate Communications and the Executive Vice President of Human Resources, both recently resigned as a direct result of the discriminatory and hostile work environment in place at Al Jazeera.

79.     Upon information and belief, both of these non-Arabic female employees made complaints about the discriminatory behavior at Al Jazeera and resigned once their job conditions deteriorated as a result.

80.     Similarly, throughout her employment, Ms. High-Bassalik repeatedly objected to the Company's misogynistic and racist treatment of its employees, until the Company ultimately decided to terminate her employment in response.

81.     Specifically, in December 2014, after Ms. High-Bassalik had a routine conversation with a coworker, she was informed by the Company that Al Jazeera was suspending her pending an investigation.

82.     Shocked, Plaintiff requested that the Company provide her with more details about the investigation, such as what had prompted it, but Al Jazeera flatly refused, claiming that the investigation was ongoing and, as a result, she had no right to know why her employment was being suspended.

83.     Approximately one month later, after a brief, 20-minute interview with Ms. High-Bassalik, the Company informed her that it did not want her to return to work.

84.     However, the Company never told Ms. High-Bassalik that her employment was being terminated, let alone that it would be terminated for cause, even though Plaintiff explicitly asked about this very point when she was told that Al Jazeera did not want her to continue her employment.

85.     It was only later, after Ms. High-Bassalik continued to challenge the Company's behavior, that Al Jazeera informed her, for the first time, that her employment was being terminated because she was purportedly in default of the Contract, despite the fact that the term required Ms. High-Bassalik to have committed a crime or other such grossly inappropriate conduct, and that Plaintiff be given an opportunity to cure such default prior to termination.

86.     Incredibly, despite this definition, the Company claimed that the default underlying Ms. High-Bassalik's termination was that she ostensibly was an ineffective leader and did not get along with other employees.

87.     Moreover, Defendants refused to pay Ms. High-Bassalik for the remainder of her term of employment, amounting to nearly 1.5 years.

88.     Defendants' justification for the termination of Ms. High-Bassalik's employment simply serves to further demonstrate their discriminatory and retaliatory treatment of her.

89.     In contrast to its decision to terminate Plaintiff, Al Jazeera merely sent one of its Arabic Senior Vice Presidents for extra training in response to complaints from both his direct reports and other employees at the Company about his discriminatory comments and conduct.

90.     Similarly, another male Senior Producer was only suspended for a week when he threatened to physically assault another Al Jazeera employee.

**FIRST CAUSE OF ACTION**
**(Discrimination in Violation of Section 1981)**
**(Against All Defendants)**

91.     Plaintiff repeats and re-alleges each and every allegation in all of the preceding paragraphs as if fully set forth herein.

92.     Defendants have discriminated against Plaintiff on the basis of her race, national origin and/or ethnicity in violation of Section 1981 by denying her the same terms and conditions of employment available to employees who are Arabic, including, but not limited to, subjecting her to disparate working conditions, allowing racist and xenophobic comments in the workplace, and ultimately terminating her employment.

93.     As a direct and proximate result of Defendants' unlawful discriminatory conduct in violation of Section 1981, Plaintiff has suffered, and continues to suffer, monetary and/or economic harm, including, but not limited to, loss of future income, compensation and benefits for which she is entitled to an award of damages.

94.     As a direct and proximate result of Defendants' unlawful discriminatory conduct in violation of Section 1981, Plaintiff has suffered, and continues to suffer, mental anguish and emotional distress, including, but not limited to, depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence and emotional pain and suffering for which she is entitled to an award of damages.

95.     Defendants' unlawful and discriminatory actions constitute malicious, willful and wanton violations of Section 1981 for which Plaintiff is entitled to an award of punitive damages.

## SECOND CAUSE OF ACTION
### (Retaliation in Violation of Section 1981)
### (Against All Defendants)

96.     Plaintiff repeats and re-alleges each and every allegation in all of the preceding paragraphs as if fully set forth herein.

97.     Defendants retaliated against Plaintiff in the pursuit of her protected activity and legal claims in violation of Section 1981 by, *inter alia*, subjecting to repeated harassment and ultimately terminating her employment.

98.     As a direct and proximate result of Defendants' unlawful retaliatory conduct in violation of Section 1981, Plaintiff has suffered, and continues to suffer, monetary and/or economic harm, including, but not limited to, loss of future income, compensation and benefits for which she is entitled to an award of damages.

99.     As a direct and proximate result of Defendants' unlawful discriminatory conduct in violation of Section 1981, Plaintiff has suffered, and continues to suffer, mental anguish and emotional distress, including, but not limited to, depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering for which she is entitled to an award of damages.

100.     Defendants' unlawful and discriminatory actions constitute malicious, willful and wanton violations of Section 1981 for which Plaintiff is entitled to an award of punitive damages.

## THIRD CAUSE OF ACTION
### (Discrimination in Violation of the NYSHRL)
### (Against All Defendants)

101.     Plaintiff repeats and re-alleges each and every allegation in all of the preceding paragraphs as if fully set forth herein.

102.    Defendants have discriminated against Plaintiff on the basis of her race, ethnicity, national origin and/or gender in violation of the NYSHRL by denying her the same terms and conditions of employment available to employees who male and/or Arabic, including, but not limited to, subjecting her to disparate working conditions, allowing racist, sexist and xenophobic comments in the workplace, and ultimately terminating her employment.

103.    As a direct and proximate result of Defendants' unlawful discriminatory conduct in violation of the NYSHRL, Plaintiff has suffered, and continues to suffer, monetary and/or economic harm, including, but not limited to, loss of future income, compensation and benefits for which she is entitled to an award of damages.

104.    As a direct and proximate result of Defendants' unlawful discriminatory conduct in violation of the NYSHRL, Plaintiff has suffered, and continues to suffer, mental anguish and emotional distress, including, but not limited to, depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence and emotional pain and suffering for which she is entitled to an award of damages.

## FOURTH CAUSE OF ACTION
### (Retaliation in Violation of the NYSHRL)
### (Against All Defendants)

105.    Plaintiff repeats and re-alleges each and every allegation in all of the preceding paragraphs as if fully set forth herein.

106.    By the actions described above, among others, Defendants retaliated against Plaintiff on the basis of her protected activities in violation of the NYSHRL by, *inter alia*, ignoring her protected complaints about the discriminatory treatment of, non-Arabic and female employees, by subjecting her to increased scrutiny and harassment and ultimately by terminating her employment.

107.    As a direct and proximate result of Defendants' unlawful retaliatory conduct in violation of the NYSHRL, Plaintiff has suffered, and continues to suffer, monetary and/or other economic harm for which she is entitled to an award of monetary damages and other relief.

108.    As a direct and proximate result of Defendants' unlawful retaliatory conduct in violation of the NYSHRL, Plaintiff has suffered, and continues to suffer, severe mental anguish and emotional distress, including, but not limited to, depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence and emotional pain and suffering for which she is entitled to an award of monetary damages and other relief.

### FIFTH CAUSE OF ACTION
**(Aiding and Abetting in Violation of the NYSHRL)**
**(Against Defendant Al Shihabi)**

109.    Plaintiff hereby repeats and re-alleges each and every allegation as contained in all of the preceding paragraphs as if fully set forth herein.

110.    Defendant Al Shihabi directly participated in the discriminatory conduct perpetrated against Plaintiff, including, but not limited to, frequent use of inappropriate comments directed at her gender, subjecting her to disparate terms and conditions of employment than those of the Company's male and/or Arabic employees and ultimately terminating Plaintiff her employment.

111.    At all relevant times, Defendant Al Shihabi the ability to control the terms and conditions of Plaintiff's employment, including, but not limited to, the power to terminate Plaintiff's employment.

112.    Defendant Al Shihabi knowingly or recklessly aided and abetted the unlawful discrimination and/or retaliation against Plaintiff in violation of the NYSHRL, including, but not limited to, his frequent use of inappropriate comments directed at her gender, subjecting her to

disparate terms and conditions of employment than those of the Company's male and/or Arabic employees and ultimately terminating Plaintiff her employment..

113.    As a direct and proximate result of Defendant Al Shihabi's misconduct, Plaintiff has suffered, and continues to suffer, monetary and/or economic damages, including, but not limited to, loss of past and future income for which she is entitled to an award of damages.

114.    As a direct and proximate result of Defendant Al Shihabi's misconduct, Plaintiff has suffered, and continues to suffer, severe mental anguish and emotional distress, including, but not limited to, depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence and emotional pain and suffering for which she is entitled to an award of damages.

**SIXTH CAUSE OF ACTION**
**(Discrimination in Violation of the NYCHRL)**
**(Against All Defendants)**

115.    Plaintiff hereby repeats and re-alleges each and every allegation in all of the preceding paragraphs as if fully set forth herein.

116.    Defendants have discriminated against Plaintiff on the basis of her race, ethnicity, national origin and/or gender in violation of the NYCHRL by denying her the same terms and conditions of employment available to employees who male and/or Arabic, including, but not limited to, subjecting her to disparate working conditions, allowing racist, sexist and xenophobic comments in the workplace, and ultimately terminating her employment.

117.    As a direct and proximate result of Defendants' unlawful discriminatory conduct in violation of the NYCHRL, Plaintiff has suffered, and continues to suffer, monetary and/or economic harm, including, but not limited to, loss of future income, compensation and benefits for which she is entitled to an award of damages.

118.     As a direct and proximate result of Defendants' unlawful discriminatory conduct in violation of the NYCHRL, Plaintiff has suffered, and continues to suffer, mental anguish and emotional distress, including, but not limited to, depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence and emotional pain and suffering for which she is entitled to an award of damages

119.     Defendants' unlawful and discriminatory actions constitute malicious, willful and wanton violations of the NYCHRL for which Plaintiff is entitled to an award of punitive damages.

**SEVENTH CAUSE OF ACTION**
**(Retaliation in Violation of the NYCHRL)**
**(Against All Defendants)**

120.     Plaintiff repeats and re-alleges each and every allegation in all of the preceding paragraphs as if fully set forth herein.

121.     By the actions described above, among others, Defendants retaliated against Plaintiff on the basis of her protected activities in violation of the NYCHRL by, *inter alia*, ignoring her protected complaints about the discriminatory treatment of, non-Arabic and female employees, by subjecting her to increased scrutiny and harassment and ultimately by terminating her employment.

122.     As a direct and proximate result of Defendants' unlawful retaliatory conduct in violation of the NYCHRL, Plaintiff has suffered, and continues to suffer, monetary and/or other economic harm for which she is entitled to an award of monetary damages and other relief.

123.     As a direct and proximate result of Defendants' unlawful retaliatory conduct in violation of the NYCHRL, Plaintiff has suffered, and continues to suffer, severe mental anguish and emotional distress, including, but not limited to, depression, humiliation, embarrassment,

stress and anxiety, loss of self-esteem and self-confidence and emotional pain and suffering for which she is entitled to an award of monetary damages and other relief.

124.    Defendants' unlawful retaliatory actions constitute malicious, willful and wanton violations of the NYCHRL for which Ms. High-Bassalik is entitled to an award of punitive damages.

### EIGHTH CAUSE OF ACTION
**(Aiding and Abetting in Violation of the NYCHRL)**
**(Against Defendant Al Shihabi)**

125.    Plaintiff hereby repeats and re-alleges each and every allegation as contained in all of the preceding paragraphs as if fully set forth herein.

126.    Defendant Al Shihabi directly participated in the discriminatory conduct perpetrated against Plaintiff, including, but not limited to, frequent use of inappropriate comments directed at her gender, subjecting her to disparate terms and conditions of employment than those of the Company's male and/or Arabic employees and ultimately terminating Plaintiff her employment.

127.    At all relevant times, Defendant Al Shihabi the ability to control the terms and conditions of Plaintiff's employment, including, but not limited to, the power to terminate Plaintiff's employment.

128.    Defendant Al Shihabi knowingly or recklessly aided and abetted the unlawful discrimination and/or retaliation against Plaintiff in violation of the NYCHRL, including, but not limited to, his frequent use of inappropriate comments directed at her gender, subjecting her to disparate terms and conditions of employment than those of the Company's male and/or Arabic employees and ultimately terminating Plaintiff her employment..

129.    As a direct and proximate result of Defendant Al Shihabi's misconduct, Plaintiff has suffered, and continues to suffer, monetary and/or economic damages, including, but not limited to, loss of past and future income for which she is entitled to an award of damages.

130.    As a direct and proximate result of Defendant Al Shihabi's misconduct, Plaintiff has suffered, and continues to suffer, severe mental anguish and emotional distress, including, but not limited to, depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence and emotional pain and suffering for which she is entitled to an award of damages.

131.    Defendant Al Shihabi's unlawful retaliatory actions constitute malicious, willful and wanton violations of the NYCHRL for which Ms. High-Bassalik is entitled to an award of punitive damages.

### NINTH CAUSE OF ACTION
**(Breach of Contract)**
**(Against Defendant Al Jazeera)**

132.    Plaintiff hereby repeats and re-alleges each and every allegation as contained in all of the preceding paragraphs as if fully set forth herein.

133.    Prior to beginning her employment with Al Jazeera, Plaintiff and the Company entered into an employment contract dated July 15, 2013.

134.    The Contract was for a term of three years, plus two additional option years.

135.    In the event the Contract was terminated by the Company, Al Jazeera was required to pay Ms. High-Bassalik for the remainder of the term of the Contract, unless she was in "default" of the Contract.

136.    Ms. High-Bassalik was never in "default" of the Contract as the term is defined therein.

---

*High-Bassalik v. Al Jazeera America, et al.*                 22                 *Complaint for Damages*

137.    The Company breached the Contract when it terminated Ms. High-Bassalik's employment as of February 5, 2015 but refused to pay her the amount she was owed under the Contract for the remaining term of her employment, through on or about July 28, 2016.

138.    The Company further breached the Contract when it determined that Ms. High-Bassalik was in default of the Contract without factual or legal basis.

139.    As a direct result of Al Jazeera's breach of contract, Plaintiff has suffered, and continues to suffer, substantial monetary and/or economic damages, including, but not limited to, loss of past and future income for which she is entitled to an award of damages.

**TENTH CAUSE OF ACTION**
**(Breach of Implied Covenant of Good Faith and Fair Dealing)**
**(Against all Defendants)**

140.    Plaintiff hereby repeats and re-alleges each and every allegation as contained in all of the preceding paragraphs as if fully set forth herein.

141.    The Contract contained an implied covenant of good faith and fair dealing that required the parties to act fairly and in good faith with each other, and to act reasonably to fulfill the intent of the parties to the contract.

142.    Defendant Al Jazeera violated the implied covenant when it claimed, without basis, that Ms. High-Bassalik was in default of the obligations of the Contract and did not give her the opportunity to cure any such "default."

143.    The Company further breached the implied covenant when it claimed that it was legally able to enforce the non-compete clause contained in the Contract, running for the full term of her employment, despite the fact that it had unlawfully breached the Contract and terminated her employment without paying her the money to which she was entitled.

144.    As a direct result of Al Jazeera's breach of the implied covenant, Plaintiff has suffered, and continues to suffer, monetary and/or economic damages, including, but not limited to, loss of past and future income for which she is entitled to an award of damages.

145.    As a direct and proximate result of Al Jazeera's misconduct, Plaintiff has suffered, and continues to suffer, severe mental anguish and emotional distress, including, but not limited to, depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence and emotional pain and suffering for which she is entitled to an award of damages.

146.    Defendant Al Jazeera's unlawful actions constitute a malicious, willful and wanton disregard for Plaintiff's rights because of which Ms. High-Bassalik is entitled to an award of punitive damages.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays that the Court enter judgment in her favor and against Defendants for the following relief:

A.    A declaratory judgment that the actions, conduct and practices of Defendants complained of herein violate the laws of the United States, the State of New York and the City of New York;

B.    An injunction and order permanently restraining Defendants and their partners, officers, owners, agents, successors, employees and/or representatives, and any and all persons acting in concert with them from engaging in any such further unlawful conduct, including the policies and practices complained of herein;

C.    An award of damages against Defendants, in an amount to be determined at trial, plus prejudgment and post judgment interest, to compensate Plaintiff for all monetary and/or economic harm, including, but not limited to, loss of income, earned bonus pay, reputational

harm and harm to professional reputation; for harm to their professional and personal reputations and loss of career fulfillment; for all non-monetary and/or compensatory harm, including, but not limited to, compensation for physical injury, pain and suffering, serious psychological and emotional distress, mental anguish, stress and anxiety, embarrassment and humiliation; all other monetary and/or non-monetary losses suffered by Plaintiff;

D.      An award of punitive damages in an amount to be determined at trial;

E.      An award of Plaintiff's reasonable attorneys' fees and costs to the fullest extent permitted by law; and

F.      Such other and further relief as the Court may deem just and proper.

**JURY DEMAND**

Plaintiff hereby demands a trial by jury on all issues of fact and damages stated herein.

Dated: June 11, 2015
    Los Angeles, California

Respectfully submitted,

**YUHL CARR LLP**

By:  ___/s/ Colin A. Yuhl_____
        Eric F. Yuhl
        Colin A. Yuhl
        Michael C. Martinez

4676 Admiralty Way, Suite 550
Marina Del Rey, CA 90292
Telephone:  (310) 827-2800
Facsimile:   (310) 827-4200
eyuhl@yuhlcarr.com
cayuhl@yuhlcarr.com
mmartinez@yuhlcarr.com

**WIGDOR LLP**

By:  _____
        Douglas H. Wigdor
        Lawrence M. Pearson
        Renan F. Varghese

85 Fifth Avenue
New York, New York 10003
Telephone: (212) 257-6800
Facsimile: (212) 257-6845
dwigdor@wigdorlaw.com
lpearson@wigdorlaw.com
rvarghese@wigdorlaw.com

*Counsel for Plaintiff*